IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Jose Angel Herrera, # 333836, ) | |
| ) | |
| ) | Civil Action No. 6:15-505-MBS-KFM |
| Petitioner, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Joseph McFadden, Warden, ) | |
| ) | |
| ) | |
| Respondent. ) | |
| ) | |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND

The petitioner is currently incarcerated at the Lieber Correctional Institution in the South Carolina Department of Corrections ("SCDC"). The petitioner was indicted by the Beaufort County Grand Jury in October 2007 for murder (Indictment No. 2007-GS-07-1921) and possession of a weapon during the commission of a violent crime. He was represented by Lauren Carroway at trial (app. 1). The petitioner did not testify at trial (app. 338). The petitioner was found guilty by a jury, and on March 18, 2009, he was sentenced by the Honorable Thomas G. Cooper, South Carolina Circuit Judge, to life in prison for murder and five years for the weapons charge.

*Underlying Case Facts*

The following facts are cited from the opinion in the petitioner's direct appeal. On September 16, 2006, Katherine Herrera ("Katherine") was shot in the back of her head. Investigators found her dead on the floor beside the toilet in her home with her pants down and toilet paper still in her hand (app. 178–79). When EMS personnel arrived, she was already dead (app. 194). In addition to being in a vulnerable position at the time of her death, the victim had a blood alcohol level of .086 (app. 220). The petitioner, Katherine's husband, was arrested three days later and was eventually convicted of murder and possession of a weapon during the commission of a violent crime.

During the two days following Katherine's death, the petitioner relayed three different versions of events to investigators:

*First Version*

Corporal Rhett Parnell of the Beaufort County Sheriff's Office was among the first police officers to arrive at the petitioner's house and speak to him on the day of the murder. The petitioner was not in custody during this conversation. The petitioner told Parnell that he left home to go to the store and that when he returned, he discovered his wife "was deceased" in their bathroom. He also gave a consistent written statement, in which he explained that he called 911 and got Katherine's daughter out of the home.

Captain Robert Bromage, also of the Beaufort County Sheriff's Office, listened to a recording of the petitioner's 911 call. He "found it suspicious" that the petitioner "mentioned that it was a small caliber pistol that inflicted the wound to his wife and she was deceased." At the scene, the petitioner told Bromage that he came back from the store and "looked around for a little bit, and then found her in the bathroom, and then noticed . . . a small caliber gunshot wound." Bromage took the petitioner into custody and spoke to him again that night at the Bluffton Police Station where he repeated that he discovered Katherine dead in the bathroom.

2

*Second Version*

Two days later, on September 18, 2006, Bromage spoke with the petitioner again at the Beaufort County Law Enforcement Center. Bromage informed the petitioner that the police found a box of ammunition in the woods and showed him a picture of the gun that was found.[1] At this point, the plaintiff changed his explanation of what happened. The petitioner said that he and Katherine were arguing and she became angry when he told her he wanted to leave. According to this version of events, Katherine grabbed the petitioner's pistol and pointed it at her head. The petitioner explained, "I went to reach for it. When I reached up to get it, [it] just accidentally shot itself." He said, "She pointed at her head . . . . That's when I went in because I didn't want my wife doing anything like that. I love my wife. She — when I reached in, she let go of it. When she let go, I guess my hand went on the trigger." The petitioner said he "panicked" and called 911 and threw the gun away. He told Bromage that the shooting "was not intentional."

*Third Version*

Later in the afternoon on September 18, 2006, Bromage interviewed the petitioner a third time. In this interview, the petitioner relayed a third version of events. The petitioner explained, "I just wanted to scare her. It was an accident, sir. I didn't mean it." He said Katherine pushed him and tried to hit him, "[a]nd that's when it pissed me off. And I did grab the pistol." The petitioner said he "went in [the bathroom] to try to scare her." He stated, "And I slipped.... I slipped, my hand hit her shoulder or something. And that's when the trigger went off." As the petitioner continued to go over what happened, the story evolved. He explained that he tripped on Katherine's legs. He told Bromage, "That's when

---

[1] The plaintiff's neighbor testified that she found a box of bullets on her side of the fence surrounding the plaintiff's yard. Sergeant Jeff Lauver, a K-9 officer with the Beaufort Sheriff's Office, testified that his search dog found a weapon near the petitioner's home.

3

I just grabbed the pistol[2] and just (inaudible) get her off my back. And that's when I just fired. Just like I said, I tripped and it fired.... I fired it." Later in the conversation, the petitioner told Bromage, "[M]y mind went blank to a certain extent that I didn't quite remember . . . . I know I fired it because it was in my hand the last time I remember it." He explained, "I tripped over her and (inaudible) and that's when the gun went off." The petitioner stated, "It might not have even been her feet. Might have been my kitten . . . . I know I tripped over something." He repeated this version a final time, and this time said, "And I just walked in there (inaudible) and fired the pistol." *State v. Herrera*, No. 2011-UP-354, 2011 WL 11734998, at *1-2 (S.C. Ct. App. June 30, 2011).

***Direct Appeal***

The petitioner filed a notice of appeal. Robert Dudek of the South Carolina Office of the Appellate Defense perfected the appeal. In the merits brief, the petitioner raised the following issues:

> 1. Whether the court erred by refusing to charge involuntary manslaughter when there was evidence the gun discharged accidentally but where appellant could be found to have been reckless particularly where a defense counsel correctly cited *State v. Light* and *State v. Burriss* in support of the request to charge?
>
> 2. Whether the court erred by refusing to charge accident, reasoning that appellant's statement alone was insufficient to justify the instruction, since what appellant told the police was evidence, and it provided evidence, in the alternative, that the gun discharged accidentally where appellant was legally in possession of a gun in his own home, and the jury could have concluded the shooting was an accident particularly where defense counsel correctly cited *State v. Burriss* in support of the request to charge.
>
> 3. Whether the court erred by admitting State's Exhibit 7-12, photographs of holes in the wall particularly where Officer Patrilla testified the holes looked like they were caused by

---

[2]The petitioner admitted to throwing the gun "between the Y area in the road" where the police recovered it. He also admitted that he threw the bullets "behind the shed."

4

> someone punching a hole in the wall, and Captain Bromage testified the photographs showed evidence of "domestic violence" where appellant told him the holes in the wall were months old since this evidence was not relevant to what happened at the time of the shooting and therefore it was just calculated to impermissible inference appellant was a violent person acting in conformance with that character trait?

(Doc. 27-3, supp. app. 2-3). The State filed a responsive brief (doc. 27-3, supp. app. 22–55). On June 30, 2011, the South Carolina Court of Appeals affirmed the petitioner's convictions and sentences. *State v. Herrera*, 2011 WL 11734998 (S.C. Ct. App. June 30, 2011).

***PCR***

On December 14, 2011, the petitioner filed an application for post-conviction relief ("PCR") in which he alleged he was being held in custody unlawfully for the following reasons:

> 1. Ineffective assistance of counsel.
>
>> a. Counsel failed to argue Applicant's first and second version of events as a basis for requesting involuntary manslaughter and preserving the issue for appellate review.
>>
>> b. Counsel failed to object to certain portions of the Solicitor's closing argument.
>>
>> c. Counsel failed to move for a change of venue.
>>
>> d. "*Doyle* violation."[3]
>
> 2. The State failed to produce all the necessary ingredients for the conviction of murder as defined in Sec. 16-3-10.
>
> 3. The Court erred in admitting photographs.
>
> 4. The Court erred in denying requests for jury instructions.

---

[3]*See Doyle v. Ohio*, 426 U.S. 610 (1976) (holding that the prosecution could not attempt to impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining him about his failure to tell the story after receiving *Miranda* warnings). The petitioner did not testify at trial (app. 338).

5

(App. 396). The respondent made its return on February 21, 2013. On April 2, 2013, an evidentiary hearing was convened at the Beaufort County Courthouse before the Honorable Perry M. Buckner, Circuit Court Judge ("the PCR court"). The petitioner was present at the hearing and represented by Dudley B. Ruffalo. Ashleigh R. Wilson, of the South Carolina Office of the Attorney General, represented the respondent. At the hearing, the petitioner proceeded on the allegations of ineffective assistance for the following reasons:

> 1. Failure to request a change in venue.
> 2. Failure to object to the State's comment about the Applicant's lack of remorse.
> 3. Failure to object to a bad malice instruction.
> 4. Failure to request an involuntary manslaughter charge.
> 5. Failure to call character witnesses.

(App. 416–19).

After reviewing the entire record and hearing the testimony of the petitioner and trial counsel, the PCR court found that the petitioner's testimony was not credible while trial counsel's testimony was credible. Therefore, the PCR court found that the petitioner's allegations of ineffective assistance of counsel were without merit (app. 443–46). On April 30, 2013, the PCR court issued its order of dismissal denying and dismissing the PCR application *with prejudice*. The order was filed with the Beaufort County Clerk of Court on May 2, 2013 (app. 439–47).

## *PCR Appeal*

The petitioner appealed from the denial of PCR by way of petition for writ of certiorari, a merits brief. The petitioner was represented in the appeal by of the South Carolina Office of Appellate Defense. The petitioner raised the following issues to the South Carolina Supreme Court:

> 1. Whether trial counsel was ineffective for failing to object to a jury charge that malice could be inferred from the use of a deadly weapon where, if the issue had been preserved, petitioner would have received the benefit of *State v. Belcher*, 388 S.C. 597, 685 S.E.2d 802 (2009) on direct appeal?

> 2. Whether trial counsel was ineffective in failing to obtain an involuntary manslaughter charge and preserve the request for a charge for appellate review?

(Doc. 27-5 at 2). The State filed a responsive brief (doc. 27-6), and the petitioner filed a reply (doc. 27-7). On July 24, 2014, the South Carolina Supreme Court denied the petition for writ of certiorari (doc. 27-8). The remittitur was issued on August 11, 2014.

## FEDERAL PETITION

On February 4, 2015, the petitioner filed his Section 2254 petition (doc. 1). On July 20, 2015, the respondent filed a motion for summary judgment (doc. 26) and a return and memorandum (doc. 27). By order filed on the same date, pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), the petitioner was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion (doc. 28). After being granted two extensions of time, the petitioner filed a response (doc. 39) in opposition to the motion for summary judgment on August 21, 2015. On December 17, 2015, the respondent supplemented the state court appendix to include pages 229-451 (doc. 39; *see* doc. 27-2).

> In his federal habeas petition, the petitioner makes the following claims:
>
> **Ground one:** Trial court erred in admitting photographs of holes in walls not relevant to the shooting and calculated to be an impermissible inference Petitioner had a violent character.
>
> **Supporting Facts:** The court admitted photos of holes in the wall to which one officer testified the holes were likely caused by someone punching a hole in the wall; and another officer testified the photos were evidence of domestic violence, and the holes, being caused months prior to the shooting were not relevant to this incident.
>
> **Ground two:** Trial counsel was ineffective for failing to object to a jury charge that malice could be inferred from the use of a deadly weapon where, if the issue had been preserved, Petitioner would have received the benefit of *State v. Belcher*, 685 S.E.2d 802 (2009) on direct appeal.

7

>**Supporting Facts:** The trial court issued an unconstitutional burden-shifting jury instruction regarding malice being inferred from the use of a gun, in contravention of clearly established law at the time of the trial, and trial counsel failed to enter the appropriate objection.
>
>**Ground three:** Trial counsel was ineffective for failing to obtain a jury instruction for voluntary manslaughter and preserve the request for a charge for appellate review.
>
>**Supporting Facts:** Trial counsel limited her argument to Petitioner's third version of events to determine what the jury should be charged, failing to argue the first and second version of Petitioner's statement as a basis for the jury charge, which the trial judge did not rule upon, thus denying Petitioner a jury charge for involuntary manslaughter and failing to reserve the issue for appellate review.

(Doc. 1 at 5–9).

In his response to the motion for summary judgment, the petitioner withdraws Grounds One and Three of his § 2254 petition (doc. 39 at 2). Accordingly, only Ground Two will be addressed below.

## **APPLICABLE LAW AND ANALYSIS**

*Summary Judgment Standard*

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Summary judgment is not "a disfavored procedural shortcut" but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

***Exhaustion***

Before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203, SCACR; S.C. Code Ann. §§ 17-27-10,–90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C.1976). If the PCR court fails to address a claim as is required by South Carolina Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP to preserve the issue for appellate review. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007).[4]

---

[4]In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the United States Court of Appeals for the Fourth Circuit found that, prior to the Supreme Court of South
(continued...)

9

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review. *State v. McKennedy*, 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990). In *McKennedy*, the South Carolina Supreme Court specifically held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court "outside of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan [v. Boerckel*, 526 U.S. 838 (1999)]." 559 S.E.2d at 854. Accordingly, a claim would not be procedurally barred from review in this court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the South Carolina Court of Appeals, either after a direct appeal or after pursuing relief in a PCR petition.

A habeas petitioner must first present his claim to the court in a manner in which it may be reviewed on the merits. *Harris v. Reed*, 489 U.S. 255, 262 (1989); *Coleman v. Thompson*, 501 U.S. 722, 735 (1991). It is well settled in South Carolina that "[i]ssues not raised and ruled upon in the trial court will not be considered on appeal." *State v. Dunbar*, 587 S.E.2d 691, 693-94 (S.C. 2003). Moreover, it is not enough that the argument presented stems from the same factual scenario; rather, the legal argument must be the same as the argument presented below. *See, e.g., State v. Haselden*, 577 S.E.2d 445, 448 (S.C. 2003) (finding differing ground for objection did not preserve issue presented for review: defendant's objection on relevancy did not preserve argument the evidence was improper character evidence); *State v. Caldwell*, 662 S.E.2d 474, 482 (S.C. Ct. App. 2008) ("Because the argument raised on appeal does not appear to have been specifically raised

---

[4](...continued)
Carolina's November 5, 2007, decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

below, it may not be preserved on appeal."). The petitioner has exhausted his state remedies as to Ground Two.

### *Ineffective Assistance of Counsel*

To be entitled to relief on an ineffective assistance claim, the petitioner had to have shown in state court that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that but for counsel's error, the result of that proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984). *Strickland* does not guarantee perfect representation, only a "'reasonably competent attorney.'" *Id.* at 687 (quoting *McMann v. Richardson*, 397 U. S. 759, 770 (1970)). There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case. *Id.* at 690.

The review of ineffective assistance of counsel claims in federal habeas is not simply a new review of the merits; rather, habeas review is centered upon whether the state court decision was reasonable. *See* 28 U.S.C. § 2254(d). Additionally, each step in the review process requires deference—deference to counsel and deference to the state court that previously reviewed counsel's actions:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 104 (internal citations omitted).

11

***Ground Two***

As noted above, the petitioner has withdrawn Grounds One and Three of his habeas petition. In the remaining ground (Ground Two), the petitioner asserts trial counsel was ineffective for failing to object to the malice jury instruction given during the trial (doc. 1 at 6).

The petitioner asserts the malice instruction given was improper because of the South Carolina Supreme Court's ruling in *State v. Belcher*, 685 S.E.2d 802, 803–04 (S.C. 2009) ("Having carefully scrutinized the historical antecedents to this permissive inference, we hold today that a jury charge instructing that malice may be inferred from the use of a deadly weapon is no longer good law in South Carolina where evidence is presented that would reduce, mitigate, excuse or justify the homicide. We therefore reverse Belcher's convictions and remand for a new trial."). The petitioner's jury trial was held approximately seven months before *Belcher* was decided; therefore, the malice instruction given during the petitioner's trial was proper at the time. *Belcher* represented a clear break with prior case law. *Id*. at 810 ("Because our decision represents a clear break from our modern precedent, today's ruling is effective in this case and for all cases which are pending on direct review or not yet final where the issue is preserved.").

The PCR court found that the petitioner failed to meet his burden of proving trial counsel should have objected to the trial court's malice jury instruction. The PCR court correctly found and the record reflects that the malice instruction given by the trial court was the standard charge given in South Carolina at the time and was not objectionable. As a result, the PCR court reasonably found this allegation of ineffective assistance of counsel was without merit. *See Allen v. McFadden*, Civil Action No. 9:14-1547-BHH, 2015 WL 2240654, at *2 (D.S.C. May 12, 2015) ("The Magistrate Judge correctly rejected the petitioner's claim in Ground 1 because: (a) the trial court adequately advised the jury of the law requiring it to find guilt beyond a reasonable doubt, and the court was not required to

define reasonable doubt under clear state and federal authority; and (b) because the *Belcher* holding upon which the petitioner seeks to rely was issued more than four years after his trial and explicitly stated that it would not apply to convictions challenged on post-conviction relief."); and *King v. McFadden*, Civil Action No. 1:14-cv-00091-JMC, 2015 WL 5036941, at *14 (D.S.C. Aug. 26, 2015) (finding petitioner failed to show that there was a substantial likelihood that result of trial would have been different had trial court not given jury charge on implied malice).

The petitioner was convicted of shooting his wife in the bathroom of their home after a verbal disagreement. At trial, counsel for the petitioner argued the lack of malice (app. 425). The jury was instructed on malice as follows:

> The law says that if one intentionally kills another with a deadly weapon, the implication of malice may arise. If facts are proven beyond a reasonable doubt sufficient to raise an inference of malice to your satisfaction, this inference would be simply an evidentiary fact to be taken into consideration by you the jury along with the other evidence in the case and you may give it such weight as you determine it should receive.

(App. 373–74).

In *State v. Belcher*, the South Carolina Supreme Court held that a "jury charge instruction that malice may be inferred from the use of a deadly weapon is no longer good law in South Carolina where evidence is presented that would reduce, mitigate, excuse or justify homicide." 685 S.E.2d at 803–04. The Supreme Court if South Carolina further held that "[t]he permissive inference charge concerning the use of a deadly weapon remains a correct statement of the law where the only issue presented to the jury is whether the defendant has committed murder (or assault and battery with intent to kill)[.]" *Id*. at 810. The malice instruction given in *Belcher* was the same instruction given in the present case.

While the malice instruction given in the petitioner's case was later held to be improper by the court in *Belcher* based on the facts presented, as noted above, at the time of the petitioner's trial the instruction was not improper or objectionable. The petitioner

13

proceeded to trial on March 16–19, 2009. *Belcher* was decided October 12, 2009—more than six months later. *See Allen*, 2015 WL 2240654, at *8. Trial counsel credibly testified at the petitioner's evidentiary hearing that the malice instruction given during the petitioner's trial was the standard instruction at the time of trial (app. 427). Counsel testified further she did not think the instruction was objectionable at the time (app. 428). Thus, counsel's performance was proper as there was no basis to challenge the instruction at the time of trial. *Allen*, 2015 WL 2240654, at *2.

In support of his argument that counsel should have objected to the malice instruction, the petitioner asserts that if counsel had objected to the instruction he would have had the benefit of *Belcher* retroactively while his case was pending on direct appeal. The petitioner asserts that this case falls within a narrow window of cases where the court's ruling in *Belcher* should be applied retroactively on post-conviction relief. The court clearly outlined which cases would have the benefit of retroactivity, and this case does not meet those requirements. *Allen*, 2015 WL 2240654, at *2. The Supreme Court of South Carolina explicitly stated in *Belcher* that it "will not apply to convictions challenged on post-conviction relief" and would only apply if evidence had been presented "that would reduce, mitigate, excuse, or justify the homicide." *Belcher*, 685 S.E.2d at 803–04, 810-11. No such evidence exists here. Therefore, *Belcher* does not apply retroactively to the petitioner's criminal case.

Courts have never required an attorney to anticipate or discover changes in the law, or facts which did not exist, at the time of the trial. *See Allen*, 2015 WL 2240654, at *8 ("Because the *Belcher* decision posed a clear break from long-established precedent some four years after Petitioner's trial, Petitioner's counsel was not unreasonable in failing to make this objection. "); and *Thomes v. State*, 426 S.E.2d 764, 765 (S.C. 1993) ("This Court has never required an attorney to anticipate or discover changes in the law, or facts which did not exist, at the time of the trial."). At the time of trial, the malice instruction had not been found improper by the Supreme Court of South Carolina. Both the Supreme Court

14

of South Carolina and this federal district court have recognized that trial counsel are not required to anticipate future changes in the law to be effective. *State v. Tapp*, 728 S.E.2d 468, 473 (S.C. 2012); and *Taylor v. Warden at Allendale*, Civil Action No. 2:13-2213-RMG-WWD, 2014 WL 4716443, at *4(D.S.C. Aug. 1, 2014, *adopted by* 2014 WL 4721183 (D.S.C., Sept. 22, 2014), *appeal dismissed*, No. 14-7158, 594 F. App'x 186 (4th Cir. Mar. 2, 2015).

Furthermore, while it is true that had counsel objected to the malice instruction given during the petitioner's trial, *Belcher* would likely have applied retroactively to this case on direct appeal, this argument by petitioner cannot be used to circumvent the court's mandate that the ruling in *Belcher* "would not apply to convictions challenged on post-conviction relief." *Allen*, 2015 WL 2240654, at *2 (citing *Belcher*, 685 S.E.2d at 810–11).

Additionally, *Belcher* noted that even when this inference of malice from the use of a deadly weapon is charged, it would be harmless where there is overwhelming evidence of malice apart from the use of a deadly weapon. *Belcher*, 685 S.E.2d at 809-10. *See State v. Stanko*, 741 S.E.2d 708, 714–15 (S.C. 2013) (finding post *Belcher* instruction of inference of malice from a deadly weapon was harmless where there was overwhelming evidence of malice). In the present case, there was overwhelming evidence of the petitioner's malice independent of the inference from a deadly weapon. As noted above, the victim was shot in the back of the head while in a vulnerable position; the petitioner gave three versions of the crime to police officers; and he disposed of the murder weapon and ammunition, which law enforcement later recovered. The petitioner has failed to show the PCR court unreasonably applied United States Supreme Court precedent in deciding this issue. The petitioner has also failed to show by clear and convincing evidence that the PCR court reached an unreasonable determination of the facts given the evidence and record before it. The petitioner has failed to overcome the deference granted the PCR court's

15

determination of this issue of ineffective assistance of counsel. *See Henry v. Warden of McCormick Corr. Inst.*, Civil Action No. 1:14-4343-BHH-SVH, 2015 WL 7769459, at *7 (D.S.C. Nov. 5, 2015) ("At the time of Petitioner's trial, the inferred malice jury instruction given by the trial judge was current and valid precedent in South Carolina. Petitioner's trial occurred over eight months prior to the South Carolina Supreme Court's decision in *Belcher*. [ECF No. 24–1 at 3]. Therefore, the PCR judge's finding that trial counsel was not ineffective for failing to challenge the inferred malice jury instruction was reasonable because trial counsel had no legal precedent for challenging the instruction."), *adopted by* 2015 WL 7776898 (D.S.C. Dec. 1, 2015). As a result, the PCR court's decision cannot be said to be the result of an unreasonable application of the performance or prejudice prongs of the *Strickland* test. *See Woods v. Donald*, 191 L.Ed.2d 464, 135 S.Ct. 1372, 1374–78 (2015).

Trial counsel is presumed to have represented the petitioner competently at trial. *Carter v. Lee*, 283 F.3d 240, 249 (4th Cir. 2002) ("Because it may be tempting to find an unsuccessful trial strategy to be unreasonable, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" (quoting *Strickland*, 466 U.S. at 689) (additional internal citations omitted)). The petitioner has done nothing to rebut this presumption. He has failed to establish that trial counsel's actions fell outside the wide range of reasonable, professionally competent assistance. *See Strickland*, 466 U.S. at 689 ("[C]ounsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case."); and *Henry*, 2015 WL 7769459, at *7 (upholding a PCR court's finding of no ineffectiveness with respect to trial counsel's failure to raise *Belcher* objection to jury instruction in trial held before *Belcher* was decided).

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 26) be granted. It is also recommended that the District Court deny a Certificate of Appealability. The attention of the parties is directed to the notice on the next page.

                                                                                      s/ Kevin F. McDonald
                                                                                      United States Magistrate Judge

January 20, 2016
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court
United States District Court
300 East Washington Street — Room 239
Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).